UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TIMOTHY LEWIS WHITING,    )   No. EDCV 11-1603-CAS(CW)
                      )
          Plaintiff,   )   MEMORANDUM AND ORDER
                      )   DISMISSING COMPLAINT
      v.           )   WITH LEAVE TO AMEND
                      )
COUNTY OF RIVERSIDE, et al., )
                      )
         Defendants.  )
_____)

The pro se plaintiff seeks to proceed in forma pauperis. His Complaint was lodged on October 5, 2011, and was filed on October 14, 2011 (as docket no. 3), pursuant to the court's Order re Leave to File Action Without Prepayment of Filing Fee (docket no. 2). Plaintiff seeks monetary damages for federal civil rights violations and state torts. [Complaint ("Cpt.") p. 2.] For reasons stated below, the Complaint is dismissed with leave to amend.

## I.   STANDARD OF REVIEW

Complaints such as Plaintiff's are subject to the court's sua sponte review under provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). See 28

U.S.C. § 1915A(a).  The court shall dismiss such a complaint, at any time, if the court finds that it (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief from a defendant immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B)(in forma pauperis complaints); Lopez v. Smith, 203 F.3d 1122, 1126-27 and n.7 (9th Cir. 2000)(en banc).

PLRA review for failure to state a claim applies the standard applied in reviewing a motion to dismiss under Fed. R. Civ. P. 12(b) (6).  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a claim for relief.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  Id.  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  Johnson v. Riverside Healthcare System, 534 F.3d 1116, 1121 (9th Cir. 2008)(quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984)(citing 2A Moore's Federal Practice ¶ 12.08).

Possible failure to state a claim is reviewed in light of the pleading standard of Fed. R. Civ. P. 8(a)(2), which requires that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has explained the pleading requirements of Rule 8(a)(2) and the

requirements for surviving a Rule 12(b)(6) motion to dismiss in Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)(per curiam), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also Moss v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009).

The Rule 8 pleading standard does not require "detailed factual allegations." Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic, 550 U.S. at 555); see also Erickson, 551 U.S. at 93; Moss,, 572 F.3d at 968. However, a complaint does not meet the pleading standard if it contains merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic, 550 U.S. at 555).

Instead, to comply with the requirements of Rule 8(a)(2) and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic, 550 U.S. at 556). This plausibility standard is not a probability requirement, but does ask for more than mere possibility; if a complaint pleads facts "merely consistent with" a theory of liability, it falls short of "the line between possibility and plausibility." Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic, 550

1  U.S. at 557).[1]

2       The Supreme Court has set out a two-pronged approach for

3  reviewing possible failure to state a claim.  Iqbal, 129 S. Ct. at

4  1949-50; see also Moss, 572 F.3d at 969-70.  First, the reviewing

5  court may identify statements in a complaint that are actually

6  conclusions, even if presented as factual allegations.  Iqbal, 129 S.

7  Ct. at 1949-50.  Such conclusory statements (unlike factual

8  allegations) are not entitled to a presumption of truth.  Id.  Here,

9  it is the conclusory nature of the statements (rather than any

10 fanciful or nonsensical nature) "that disentitles them to the

11 presumption of truth."  Id. at 1951.  Second, the court presumes the

12 truth of any remaining "well-pleaded factual allegations," and

13 determines whether these allegations and reasonable inferences from

14 them plausibly support a claim for relief.  Id. at 1950; see also

15 Moss, 572 F.3d at 969-70.

16      If the court finds that a complaint should be dismissed for

17

18      [1]  In Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011)(revised
19 opinion), petition for cert. filed, 80 U.S.L.W. 3462 (Dec. 30, 2011,
   No. 11-834), the Ninth Circuit noted apparent differences in recent
20 Supreme Court cases on the pleading standard under Rule 8(a), but
   concluded as follows:
21      But whatever the difference between these cases, we can at
        least state the following two principles common to all of
22      them.  First, to be entitled to the presumption of truth,
        allegations in a complaint or counterclaim may not simply
23      recite the elements of a cause of action, but must contain
        sufficient allegations of underlying facts to give fair
24      notice and to enable the opposing party to defend itself
        effectively.  Second, the factual allegations that are taken
25      as true must plausibly suggest an entitlement to relief,
        such that it is not unfair to require the opposing party to
26      be subjected to the expense of discovery and continued
        litigation.
27
28 Starr, 652 F.3d at 1216; but see, Starr v. County of Los Angeles, 659
   F.3d 850 (9th Cir. 2011)(dissent from denial of en banc rehearing).

4

failure to state a claim, the court has discretion to dismiss with or without leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000)(en banc).  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if the plaintiff is <u>pro se</u>.  <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995).  If, however, it is clear after careful consideration that a complaint's deficiencies cannot be cured by amendment, the court may dismiss without leave to amend.  <u>Cato</u>, 70 F.3d at 1107-11; <u>see also</u> <u>Moss</u>, 572 F.3d at 972.

## II.  <u>PLAINTIFF'S CLAIMS AND ALLEGATIONS</u>

Plaintiff seeks monetary damages on federal civil rights claims under 42 U.S.C. § 1983 for First Amendment retaliation, Fourth Amendment unreasonable seizure and excessive force, and Fourteenth Amendment due process and equal protection violations, as well as on state law claims.  [Complaint ("Cpt.") generally.][2]  Plaintiff also asserts claims, under 42 U.S.C. § 1983, for "Supervisory Liability" and "Municipal Liability."  [<u>Id.</u>]  However, as discussed below, these are not separate legal claims or causes of action, but simply theories of liability on how a supervisor or a municipality may be held liable for a specific constitutional violation, such as First Amendment retaliation or excessive force, actually committed by a subordinate or an employee.

Plaintiff names as defendants Riverside County and eleven individual capacity defendants identified as officers of the Riverside County Sheriff's Department ("RCSD"), namely County Sheriff Sniff, eight officers of RCSD's Palm Desert Station, and two officers of the

---

[2]  Plaintiff enumerates ten claims in the Complaint's caption, but nineteen "causes of action" in the body of the Complaint.

1   Indio Station.  [Cpt. pp. 1-4.]  The eight defendants identified as
2   Palm Desert officers are Captain Wilham, Sergeant Elders, Sergeant
3   Horkel, Deputy Gelinas, Deputy Cleary, Deputy Chaney, Sergeant
4   Covington, and Deputy Robertson.  [Id.]  The two Indio officers are
5   Captain Raymond Gregory and Deputy Adams.  [Id.]

6        Plaintiff makes specific allegations with respect to three
7   incidents on July 22, 2009, October 5, 2009, and August 28, 2010.
8   [Cpt. generally.]

9        **A.   THE FIRST INCIDENT (JULY 22, 2009)**

10       Plaintiff alleges that, on July 22, 2009, at about 8:15 a.m., he
11   was riding his bicycle to work as a temporary day laborer through the
12   Labor Ready agency.  [Cpt. at 6.]  Plaintiff was not doing anything
13   suspicious.  [Cpt. at 6-7.]  A Palm Desert Sheriff's Department
14   vehicle, with siren on and lights flashing, pulled Plaintiff over near
15   the Labor Ready agency.  [Cpt. at 7.]  A sheriff's deputy, later
16   identified as Defendant Chaney, exited the vehicle and approached
17   Plaintiff.  Plaintiff asked Chaney, "Why am I being stopped."  Chaney
18   said, "I just want to talk to you."  Plaintiff responded, "I do not
19   want to talk to you."  Chaney asked, "Are you on parole or probation?"
20   Plaintiff said, "No."  Plaintiff further stated that he knew what the
21   stop was about, namely police misconduct complaints Plaintiff had
22   filed against various officers.  Chaney said, "I do not know who you
23   are."  Plaintiff asked, "Am I under arrest, if not then I should be
24   free to walk away."  Chaney asked where Plaintiff was coming from, and
25   Plaintiff said from a friend's house.  [Id.]

26       Plaintiff stated that this was racial profiling.  [Cpt. at 7.]
27   Chaney continued to say, "I just want to talk to you.  What is your
28   name."  Plaintiff asked Chaney whether Plaintiff could retrieve his

cell phone to call the FBI in Los Angeles, and Chaney agreed.  [Id.]
At about 8:39 a.m., Plaintiff got an FBI agent on the phone, and told
him that a sheriff's deputy had stopped him for no reason and was
violating his civil rights.  [Cpt. at 8.]  The FBI agent agreed to
remain on the phone and listen in during the following interchange.
[Id.]

Chaney called for back up, and a few minutes later Defendants
Sergeant Covington and Deputy Robertson arrived.  [Cpt. at 8.]
Covington and Robertson exited their vehicle and walked over to
Plaintiff.  Plaintiff told and spelled his name to the FBI agent in a
loud voice.  Chaney, with his right hand on his gun, approached the
other two and told Covington that Plaintiff was speaking with an FBI
agent.  [Id.]  Chaney then came behind Plaintiff.  [Cpt. at 9.]
Plaintiff continued telling the FBI agent what was happening.
Plaintiff asserts that Chaney knew Plaintiff's identity and was
intimidating and harassing him on behalf of the officers Plaintiff had
complained about.  Plaintiff then walked away, pushing his bicycle,
while Chaney continued repeating, "What's your name?"   [Id.]

Plaintiff ignored this, and entered the Labor Ready office, and
spoke with the assistant manager, Tina, who noticed that a Sheriff's
Department vehicle had stopped in front of the office.  [Cpt. at 9.]
Plaintiff told Tina that the deputies had harassed him in hopes that
the management would not dispatch him for work, thereby preventing him
from gaining employment.  [Cpt. at 9-10.]

**B.   THE SECOND INCIDENT (OCTOBER 5, 2009)**

On October 5, 2009, at about 2:00 a.m., Plaintiff walked onto the
property of the Agua Caliente Casino, which Plaintiff had visited for
some years.  [Cpt. at 10.]  Plaintiff saw a police vehicle in the

7

1    parking lot, with two officers inside and its lights pointed toward

2    him.  He also saw one Casino security guard on a bike, and another

3    sitting in a security vehicle.  Plaintiff understood that this might

4    be an instance of harassment and intimidation on behalf of the

5    officers about whom Plaintiff had complained, and moved toward the

6    main doorway to the Casino so as to be covered by the Casino

7    surveillance cameras.  [Id.]

8        As Plaintiff moved toward the doorway, the police vehicle moved

9    in his direction, and an officer, later identified as Defendant

10   Gelinas, jumped out and yelled, "Can we talk to you?"  [Cpt. at 11.]

11   Plaintiff said "No," and turned around and continued walking to the

12   doorway.  When Plaintiff reached the doorway and noticed that both

13   police officers had exited their vehicle, he stopped.  As the officers

14   approached, Gelinas again said, "Can we talk to you," and Plaintiff

15   again said, "No."  Gelinas asked, "Do you have any ID?" and Plaintiff

16   said, "No."  Plaintiff then asked, "Why am I being detained?"  Gelinas

17   said, "There are many drug dealers in this area.  I have conducted

18   checks on other people as well."  Plaintiff said, "I am not a drug

19   dealer."  Gelinas said, "How do we know that since we do not know who

20   you are," and again asked for Plaintiff's ID.  Plaintiff again said

21   that he did not have any.  [Id.]

22       Plaintiff then asked Gelinas, "Am I under arrest, if not I should

23   be free to walk away."  Gelinas said, "No, but we can stop and ask you

24   for ID."  [Cpt. at 11.]  Plaintiff told the officer that the reason he

25   was being detained was that he had filed misconduct complaints against

26   over fourteen police officers and "one of your co-workers, a deputy

27   sheriff," and went on to say, "You know who I am and this is BS."

28   Gelinas asked Plaintiff for the name of the deputy, and Plaintiff

8

identified Defendant Chaney.  Gelinas then stated that he was an
officer of the Rancho Mirage Police Department, not a sheriff's
deputy.  Plaintiff believed that Gelinas was lying.  [Id.]

Gelinas then asked again for Plaintiff's ID, and Plaintiff again
said that he did not have any.  [Cpt. at 11.]  Gelinas said, "How do
we know there might not be a warrant for your arrest?"  [Cpt. at 11-
12.]  Plaintiff said that the officers had the technology to check
this on their vehicle computer.  [Cpt. at 12.]  Gelinas then
apparently took a video picture of Plaintiff and stated that there was
a warrant for his arrest.  Plaintiff denied this.  Gelinas then said,
"How about this for technology," and drew his metal baton, and
expanded it, making threatening gestures at Plaintiff.  [Cpt. at 12-
13.]  Plaintiff said, "that is a threat."  Gelinas replied, "The water
bottle you are holding is a threat."

After the police officers indicated that Plaintiff was free to
walk away, he asked one of the Casino security guards to let him enter
the Casino.  [Cpt. at 13.]  The guard told Plaintiff he could not
enter without proper ID.  This was the first time in nine years
Plaintiff had been asked for ID on entering the Casino.  Plaintiff
asserts that the police officers must have known his identity (as the
person who had made complaints about fourteen officers) and tipped off
the security guards.  [Id.]

Plaintiff later learned from the Palm Desert Sheriff's station
that the other officer with Gelinas was Defendant Cleary.  [Cpt. at
13.]  About a month later, on November 4, 2009, Plaintiff went to the
Palm Desert Sheriff's station to get the names of the deputies
involved in the October 5, 2009 incident.  [Cpt. at 14.]  Defendant
Captain Wilham told Plaintiff he would be given the information.

Later, a clerk told Plaintiff she was having trouble finding information on either the July 22 or the October 5 incident.  Finally, Defendant Sergeant Horkel told Plaintiff the incidents never happened. [Id.]

### C.   THE THIRD INCIDENT (AUGUST 28, 2010)

On August 28, 2010, at about 4:25 p.m., Plaintiff arrived at "CVRM" for emergency overnight shelter.  [Cpt. at 14.]  Plaintiff checked in and waited in the lobby to be assigned a bed number.  At about 4:40 p.m., Plaintiff saw a Sheriff's Department cruiser passing by the building.  A few minutes later a distraught woman entered the lobby asking for emergency medical aid.  [Id.]  She said, "Help me, help me! Can somebody help me!  Nobody will help me."  Plaintiff told her, "CVRM staff will help you but be patient because no staff members are available at the moment."  [Cpt. at 15.]  Plaintiff asked her, "What is the problem?"  The woman said that her boyfriend had assaulted her, and she had taken twenty Ativan pills and sixteen Nyquil tablets and had drunk a half gallon of liquor.  Plaintiff alerted staff members.  While waiting for the staff members, Plaintiff recognized the woman as someone he had met on a bus, but she was not a friend.  [Id.]  Staff members took over, and called paramedics, who arrived about 5:05 p.m.  [Cpt. at 15-16.]

After the woman was taken away in an ambulance, Defendant Deputy Adams arrived on the scene.  [Cpt. at 16.]  Plaintiff states that this "appeared to be a pre-orchestrated plan of retaliation against Plaintiff."  After talking with staff members, Adams saw Plaintiff, and motioned to him to step outside.  Plaintiff responded by saying, "I do not know anything, and I do not want to talk to you."  Adams said, "Take your hands out of your pockets, and I am only going to

tell you once." Plaintiff, afraid of Adams, removed his hands from his pockets. Adams asked Plaintiff for identification, and Plaintiff said he did not have any. [Id.] Adams then asked for Plaintiff's name, and Plaintiff said, "Am I under arrest, and if not then I should be free to walk away?" Adams said, "No," and Plaintiff walked away. [Cpt. at 16-17.]

Plaintiff later visited the Indio Sheriff's Station asking for a copy of the report of this incident, but the clerk told him that the report was confidential and would not give him a copy. [Cpt. at 17.] Plaintiff later told a pharmacist about the incident, and the pharmacist said that someone who had taken that much Ativan, Nyquil, and alcohol would be dead or comatose. Plaintiff later saw the same woman on a bus. Plaintiff believes that "this incident was a well-orchestrated plan of retaliation" to attach Plaintiff's name to "a bogus criminal investigation." [Id.]

**D. PLAINTIFF'S "CAUSES OF ACTION"**

As noted above, Plaintiff enumerates ten claims in the Complaint's caption, but sets out his legal claims in the form of nineteen causes of action ("COAs 1-19") in the body of the Complaint. As COA 1, Plaintiff claims that, in all three incidents, Defendants were retaliating against Plaintiff for his exercise of his First Amendment rights in having previously filed misconduct complaints against numerous law enforcement personnel. [Cpt. at 17-19.] As COA 2, Plaintiff claims that, in all three incidents, he was "falsely imprisoned," in violation of the Fourth Amendment. [Cpt. at 19.] As COA 3, Plaintiff claims that, in all three incidents, he was subjected to unreasonable seizure, in violation of the Fourth Amendment. [Cpt. at 20.] As COA 4, Plaintiff claims that, in the first and second

11

incidents, he was subjected to excessive force, in violation of the Fourth Amendment.  [Cpt. at 20-21.]  In COAs 5-9, Plaintiff does not raise new constitutional claims, but rather asserts "supervisory liability" for the three incidents against the following supervisors: Defendants Wilham (COA 5), Covington (COA 6), Elders (COA 7), Gregory (COA 8), and Sniff (COA 9).  [Cpt. at 21-25.]  In COAs 1-13, Plaintiff asserts municipal liability against Riverside County for the three incidents.  [Cpt. at 26-30.]  In COA 14, Plaintiff claims that all three incidents involved racial discrimination and deprived Plaintiff of his right to equal protection under the Fourteenth Amendment. [Cpt. at 30-31.]

The above fourteen "causes of action" are all asserted as federal civil rights claims under 42 U.S.C. § 1983.  [Cpt. at 17-31.] Plaintiff also asserts five state law claims of intentional infliction of emotional distress (COA 15), negligence (COA 16), negligent hiring, training, etc. (COA 17), intentional interference with contractual relations (COA 18), and intentional interference with prospective economic relations (COA 19).  [Cpt. at 31-35.]  Plaintiff seeks special damages, punitive damages, and costs.  [Cpt. at 36.]

### III.  GROUNDS FOR DISMISSAL

The Complaint contains numerous defects and is subject to dismissal on multiple grounds.

### A.  PLAINTIFF'S § 1983 CLAIMS IN GENERAL

The elements of a claim under 42 U.S.C. § 1983 are that a person, acting under color of state law, deprived a plaintiff of a right under the federal constitution or laws.  See West v. Atkins, 487 U.S. 42, 48-49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); Ortez v. Washington County, 88

F.3d 804, 810 (9th Cir. 1996). Here, Plaintiff has successfully pled that the named defendants were acting under color of state law. However, as discussed below, for the most part he has not properly alleged that the named defendants deprived him of a right under the federal constitution or laws.

In pleading a § 1983 claim, a plaintiff must "allege specific facts linking each defendant to a § 1983 violation." Ortez, 88 F.3d at 809. The plaintiff must set forth factual allegations with sufficient particularity to give a defendant "fair notice of the type of claim being pursued." Ortez v. Washington County, 88 F.3d 804, 810 (9th Cir. 1996). Id. To establish the liability of an individual capacity defendant on a § 1983 claim, a plaintiff must show that the defendant personally caused a civil rights violation. See Kentucky v. Graham, 473 U.S. 159, 167, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). That is, the plaintiff must show that the defendant did an affirmative act, participated in another's act, or omitted to perform an act the defendant was legally required to do, and that this caused the violation. See Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991)(en banc).

Here, for example, Plaintiff has made no factual allegations to support claims that individual capacity Defendants Robertson, Cleary, or Horkel, by their individual actions or omissions, caused any violation of Plaintiff's rights. On the contrary, Plaintiff simply alleges that Officer Robertson was present during the first incident, Officer Cleary was present during the second incident, and Sergeant Horkel simply told Plaintiff that there was no record that the first two incidents happened. Accordingly, Plaintiff has failed to state any § 1983 claim against these three defendants.

1

   **B.   EQUAL PROTECTION**

2       As noted above, in COA 14, Plaintiff claims that, in all three

3   incidents, all Defendants denied Plaintiff equal protection of the

4   laws as guaranteed under the Fourteenth Amendment.  [Cpt. at 30-31.]

5   Specifically, Plaintiff claims that Defendants acted out of racial

6   discrimination and subjected him to racial profiling.  [Cpt. at 4-5,

7   30-31.]

8       An equal protection violation requires a showing that persons

9   similarly situated were unfairly treated differently.  <u>See</u> <u>City of

10  Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439, 105 S. Ct.

11  3249, 87 L. Ed. 2d 313 (1985); <u>Shakur v. Schriro</u>, 514 F.3d 878, 883-85

12  (9th Cir. 2008).  A showing of invidious discriminatory intent is also

13  required.  <u>See</u> <u>Village of Arlington Heights v. Metropolitan Housing

14  Dev. Corp.</u>, 429 U. S. 252, 270-71, 97 S. Ct. 555, 50 L. Ed. 2d 450

15  (1977); <u>Navarro v. Block</u>, 72 F.3d 712, 716 (9th Cir. 1996).

16  Intentional discrimination means that a defendant acted at least in

17  part because of a plaintiff's membership in a protected class.  <u>See

18  Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1999); <u>Maynard v.

19  City of San Jose</u>, 37 F.3d 1396, 1404 (9th Cir. 1994).

20      Here, Plaintiff claims that Defendants acted out of racial

21  discrimination.  [Cpt. at 30.]  However, Plaintiff makes no actual

22  factual allegations directly supporting a claim that any Defendants

23  acted out of racial discrimination.  Plaintiff's "allegations" of

24  racial discrimination are all merely conclusory statements, and need

25  not be accepted as true in screening Plaintiff's complaint.  <u>See

26  Iqbal</u>, 129 S. Ct. at 1949-50.  Plaintiff's only relevant <u>factual</u>

27  allegations – that he is African-African and none of the defendants

28  are African-American – do not plausibly support his claim that

14

Defendants acted out of racial discrimination or treated him differently than another person similarly situated because of his race.  Id.  Accordingly, Plaintiff has failed to state an equal protection claim against any Defendant.

### C.   RETALIATION

In COA 1, Plaintiff claims that, in all three incidents, all Defendants were retaliating against him because he had exercised his First Amendment rights by filing misconduct complaints against numerous law enforcement personnel.  [Cpt. at 17-19.]  "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, . . ."  Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)(citing Crawford-El v. Britton, 523 U.S. 574, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)).

Here, however, Plaintiff's "allegations" of retaliation are, once again, purely speculative and conclusory.  Iqbal, 129 S. Ct. at 1949-50.  He offers no factual allegations to show that Defendants – who repeatedly attempted to obtain identification from Plaintiff – even knew who he was, let alone that they knew about his history of filing complaints against other officers, or that they acted as they did in order to retaliate against Plaintiff for having exercised his First Amendment rights.  Plaintiff simply asserts his own subjective belief that Defendants were lying when they pretended not to know who he was, and were knowingly harassing him because of the complaints he had filed about other officers.  [See, e.g., Cpt. at 9, 11, 13, 17.]

Plaintiff's actual factual allegations regarding the three

incidents do not plausibly support his claims that the officers, who appeared to be trying to get Plaintiff to identify himself, not only knew him by sight, but knew his history of complaining about police officers, and acted to intimidate him and chill his future exercise of his First Amendment rights.  <u>Iqbal</u>, 129 S. Ct. at 1949-50. Particularly implausible is Plaintiff's suggestion that the entire third incident, including the "distressed" woman's plea for help, was all "a well-orchestrated plan of retaliation." [Cpt. at 17.]  It is equally or more likely that the officers, whether or not entitled to do so, simply reacted to an unknown person who refused to identify himself.

Plaintiff has failed to state a First Amendment claim for retaliation.

### D. FOURTH AMENDMENT CLAIMS

In COA 2, Plaintiff claims that the defendants who stopped him in the three incidents subjected him to "false imprisonment" in violation of his rights under the Fourth Amendment.[3]  [Cpt. at 19.]  However, Plaintiff's allegations do not support a claim to have been arrested, much less imprisoned, falsely or otherwise.  Instead, his Fourth Amendment claim regarding his alleged detention during the three incidents is properly brought in COA 3 (unreasonable seizure). Accordingly, as a Fourth Amendment claim, COA 2 is, at best, an unnecessary duplication.

In COA 3, Plaintiff claims that Defendants Chaney, Gelinas, and

---

[3]  "False imprisonment" may also be a state law tort.  <u>See</u>, <u>e.g.</u>, <u>Young v. County of Los Angeles</u>, 655 F.3d 1156, 1169 (9th Cir. 2011) (defining the tort under California law).  However, Plaintiff does not here present such a state tort claim of false imprisonment.

1   Adams, in stopping him in the three incidents, subjected him to

2   unreasonable seizures in violation of the Fourth Amendment.[4]

3        The Fourth Amendment, made applicable to the states by the

4   Fourteenth Amendment, prohibits unreasonable searches and seizures,

5   and protects a person walking on the street.  Terry v. Ohio, 392 U.S.

6   1, 8-9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  However, "a seizure

7   does not occur simply because a police officer approaches an

8   individual and asks a few questions."  Florida v. Bostick, 501 U.S.

9   429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).  Thus, for

10  example, "a police officer is free to ask a person for identification

11  without implicating the Fourth Amendment.  '[I]nterrogation relating

12  to one's identity or a request for identification by the police does

13  not, by itself, constitute a Fourth Amendment seizure.'"  Hiibel v.

14  Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177,

15  185, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004)(quoting INS v. Delgado,

16  466 U.S. 210, 216, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984)).

17       There is only a seizure of the person when an officer "'by means

18  of physical force or show of authority, has in some way restrained the

19  liberty of a citizen . . .'"  Bostwick, 501 U.S. at 434 (quoting

20  Terry, 392 U.S. at 19 n.16).  There is no seizure "[s]o long as a

21  reasonable person would feel free 'to disregard the police and go

22  about his business,'"  Bostwick, 501 U.S. at 434 (quoting California

23  v. Hodari D., 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690

24

25       [4]  In both COA 3 and COA 4, Plaintiff also asserts claims against
    Defendants Covington, Robertson, and Cleary.  However, as noted above,
26  Plaintiff's actual factual allegations do not support any claim
    against Defendants Robertson (who was merely present during the first
27  incident), or Cleary (who was merely present during the second
    incident).  Plaintiff's claims against Defendant Covington are
28  discussed below, under Supervisory Liability.

(1991)).  Thus, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554, 200 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).  "Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  Mendenhall, 446 U.S. at 554.

Even if a brief stop does become a seizure, it is not necessarily an unreasonable seizure.  Beginning with Terry v. Ohio, the Supreme Court has recognized that, based on reasonable suspicion that a person may be involved in criminal activity, an officer may then "stop the person for a brief time and take additional steps to investigate further."  Hiibel, 542 U.S. at 185.  To be a reasonable seizure, such a Terry stop must be brief, limited, and justified in its inception and reasonably related in scope to the circumstances justifying the stop in the first place.  Id. (citing, inter alia, Delgado, 466 U.S. at 216; Terry, 392 U.S. at 20).

In the first incident, so long as Defendant Chaney simply asked Plaintiff to identify himself, there does not appear to have been a seizure under the Fourth Amendment.  However, when, according to Plaintiff's allegations [Cpt. at 8-9], Chaney called for backup, two other officers arrived, and Chaney moved behind Plaintiff while touching his gun, a reasonable person in Plaintiff's position might well have believed he was not free to leave at that moment.  Accordingly, on Plaintiff's allegations, there was at least a brief

seizure during the first incident.   Considering Plaintiff's further allegations about his and Chaney's actions during the incident, there is nothing on the face of the Complaint to show that this seizure was reasonable.   Accordingly, it appears that Plaintiff has stated a cognizable unreasonable seizure claim against Defendant Chaney with respect to the first incident.

Again, in the second incident, so long as Defendant Gelinas was simply asking Plaintiff to identify himself, there does not appear to have been a seizure.   However, when, on Plaintiff's allegations [Cpt. at 12-13], Gelinas said, "how about this technology," drew his metal baton, stared into Plaintiff's eyes from about two feet away, and then expanded the baton and kept moving it while continuing to look Plaintiff in the eyes [Cpt. at 12-13], here too, a reasonable person in Plaintiff's position might well have believed he was not free to leave.   Accordingly, there was also at least a brief seizure during the second incident.   Again, as with the first incident, there is nothing on the face of the Complaint to show that this seizure was reasonable.   Thus, Plaintiff has also stated a cognizable unreasonable seizure claim against Defendant Gelinas with regard to the second incident.

On the other hand, Plaintiff's allegations do not support an unreasonable seizure claim with respect to the third incident.   There, too, Defendant Adams, for the most part, simply asked Plaintiff to identify himself. [Cpt. at 16.]   Plaintiff alleges that he felt threatened and not free to leave when Adams said, "Take your hands out of your pockets, and I am only going to tell you once." [Id.]   However, Plaintiff did take his hands out of his pockets, then continued to refuse to answer Plaintiff's questions and ask whether he

19

1  was free to leave, until Adams said Plaintiff was not under arrest,

2  and Plaintiff did, in fact, leave without answering any of Adams's

3  questions. [Cpt. at 16-17.]  Here, Plaintiff's factual allegations

4  support the conclusion that a reasonable person in his situation would

5  have felt free to leave without answering questions, as Plaintiff, in

6  fact, did. <u>See</u>, <u>e.g.</u>, <u>Hodari D.</u>, 499 U.S. at 628 (no seizure when

7  Plaintiff disregarded "show of authority").  Accordingly, Plaintiff

8  has not stated an unreasonable seizure claim with respect to the third

9  incident.

10      In COA 4, Plaintiff claims that Defendants subjected him to

11  excessive force in violation of the Fourth Amendment. [Cpt. at 20-

12  21.]  This claim is based on factual allegations with respect to the

13  first and second incidents only, namely the allegations that, during

14  the first incident, Defendant Chaney touched his gun, and that, during

15  the second incident, Defendant Gelinas drew and extended his metal

16  baton. [<u>Id.</u>]

17      The Fourth Amendment's unreasonable seizure clause also applies

18  to a claim of excessive force during an arrest or investigatory stop.

19  <u>Graham v. Connor</u>, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d

20  443 (1989).  The right to make an arrest or an investigatory stop

21  necessarily includes the right to use or threaten to use some degree

22  of physical force. <u>Graham</u>, 490 U.S. at 396 (<u>citing</u> <u>Terry</u>, 392 U.S. at

23  22-27).  Whether the force used was reasonable is an objective test,

24  "judged from the perspective of a reasonable officer on the scene

25  . . ." <u>Graham</u>, 490 U.S. at 396-97.  "'Not every push or shove, even

26  if it may later seem unnecessary in the peace of a judge's chambers'"

27  . . . violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396

28  (<u>quoting</u> <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

1   Under Ninth Circuit law, the first step in analyzing a claim of
2   excessive force is to evaluate the type and amount of force used.
3   Glenn v. Washington County, ___ F. 3d ___, No. 10-35636, 2001 WL
4   6760348, at *5 (9th Cir. Dec. 27 2011)(citing Espinosa v. City and
5   County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010); Miller v.
6   Clark Cnty., 340 F.3d 959, 964 (9th Cir.2003)).  Even a de minimis use
7   of force is evaluated as to whether it was objectively reasonable.
8   Bodney v. Pima County Sheriff's Dept., No. CV 06-0015, 2009 WL
9   2513786, at *11 (D. Ariz. Aug. 7, 2009).

10       Here, given that the alleged use of force by Chaney and Gelinas
11   is part of the basis for claiming that Chaney and Gelinas stopped
12   Plaintiff, it is difficult to analyze whether the alleged use of force
13   was reasonable without further analyzing whether there actually was a
14   Terry stop during the first two incidents, and, if so, whether it was
15   reasonable.  Therefore, at this point, Plaintiff should be allowed to
16   further pursue his excessive force claims as part of his Fourth
17   Amendment unreasonable seizure claims against Chaney and Gelinas.

18       **E.   SUPERVISORY LIABILITY UNDER § 1983**

19       As noted above, in his fifth through ninth "causes of action"
20   Plaintiff asserts "supervisory liability" for the three incidents
21   against the following supervisory officers: Defendants Wilham (COA 5),
22   Covington (COA 6), Elders (COA 7), Gregory (COA 8), and Sniff (COA 9).
23   [Cpt. at 21-25.]

24       In federal civil rights claims, supervisory officials cannot be
25   held vicariously liable for unconstitutional acts actually committed
26   by their subordinates on a theory of respondeat superior.  Iqbal, 129
27   S. Ct. at 1948.  Strictly speaking, the term "supervisory liability"
28   is a misnomer in such cases.  Id. at 1949.  Because there is no

vicarious liability on such claims, a federal civil rights plaintiff

"must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution.   Id.

In certain circumstances, supervisors can be held liable for causing

the actions of their subordinates (1) by setting in motion a series of

acts by others, or knowingly refusing to terminate a series of acts by

others, which they knew or reasonably should have known would cause

others to inflict constitutional injury; (2) by culpable action or

inaction in training, supervision, or control of subordinates; (3) by

acquiescence in a constitutional deprivation by subordinates; or (4)

by conduct that shows a "reckless or callous indifference to the

rights of others." Al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir.

2009)(citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.

1991)(internal quotation marks omitted)).   After Iqbal, the plaintiff

must show that the supervisor had the same mental state required for

the subordinate under the specific constitutional claim in question,

such as personally having an intent to discriminate in a purposeful

discrimination case, or being deliberately indifferent in a deliberate

indifference case.   Starr, 652 F.3d at 1205-07.

       Here, to begin with, Plaintiff cannot support a claim that

supervisors were liable for actions directly taken by subordinates if

he has not shown that the subordinates themselves violated Plaintiff's

constitutional rights.   Thus, Plaintiff cannot state a claim that

supervisors were liable for retaliation, racial discrimination, or any

claimed Fourth Amendment violation during the third incident.

Furthermore, Plaintiff's factual allegations do not support a claim

that any of his named supervisory defendants individually caused the

Fourth Amendment violations allegedly committed by Defendants Chaney

and Gelinas during the first and second incidents.  On the contrary,
Plaintiff's assertions in that regard are merely conclusory, and not
entitled to be taken as true.  Iqbal, 129 S. Ct. at 1949-50.
Accordingly, in the Complaint as it stands, Plaintiff has failed to
state any civil rights claims against those Defendants named simply as
supervisors.

**F.   MUNICIPAL LIABILITY UNDER § 1983**

As also noted above, in his tenth through thirteenth "causes of
action," Plaintiff asserts municipal liability against Riverside
County for the three incidents.  [Cpt. at 26-30.]  Municipalities and
other local government units are considered "persons" under 42 U.S.C.
§ 1983 and therefore may be liable for causing a constitutional
deprivation.  Monell v. New York City Dep't of Social Services, 436
U.S. 658, 690-91, 98 S. Ct. 2018, 50 L. Ed. 2d 61 (1978).  However, as
with supervisory liability, there is no "vicarious liability" or
respondeat superior for a municipality on a federal civil rights
claim.  Iqbal, 129 S. Ct. at 1948 (citing Monell, 436 U.S. at 691).
To establish municipal liability, Plaintiff must show that a county
policy or custom was the moving force in causing Plaintiff to suffer
constitutional injury.  Board of County Com'rs of Bryan County v.
Brown, 520 U.S. 383, 407-408, 117 S. Ct. 1382, 137 L. Ed. 2d 626
(1997); Monell, 436 U.S. at 691.

Again, as an initial and dispositive matter, Plaintiff must
demonstrate an underlying violation of his constitutional rights.  See
Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1997)
(municipality not liable under § 1983 for acts committed pursuant to
municipal policy or custom unless plaintiff shows individual actors
actually violated his constitutional rights).  As discussed above,

23

1  Plaintiff has not successfully pled his retaliation or racial

2  discrimination claims, or any Fourth Amendment claim with respect to

3  the third incident.  On the other hand, Plaintiff's <u>Monell</u> allegations

4  with respect to his Fourth Amendment claims regarding the first and

5  second incidents are, once again, merely conclusory.  See <u>Iqbal</u>, 129

6  S. Ct. at 1949-50.  Plaintiff has not pled any factual allegations to

7  support a claim that there was any county policy or custom that caused

8  the alleged unreasonable seizure and excessive force by Defendants

9  Chaney and Gelinas.  Plaintiff claims that his own case shows that

10  there was such a policy, but, in general, a pattern or practice cannot

11  be shown by a single incident.  See <u>Connick v. Thompson</u>, ___ U.S. ___,

12  131 S. Ct. 1350, 1365-66, 179 L. Ed. 2d 417 (2011); <u>see also</u> <u>Bryan</u>,

13  520 U.S. at 406-07 (fact that plaintiff suffered deprivation of

14  federal rights at hands of municipal employee not enough to permit

15  "inference of municipal culpability and causation").  Accordingly, in

16  the Complaint as it stands, Plaintiff has failed to state any <u>Monell</u>

17  claims against the county.

18      **G.   STATE LAW CLAIMS**

19      As noted above, Plaintiff also includes five causes of action in

20  which he asserts state law claims of intentional infliction of

21  emotional distress (COA 15), negligence (COA 16), negligent hiring,

22  training, etc. (COA 17), intentional interference with contractual

23  relations (COA 18), and intentional interference with prospective

24  economic relations (COA 19).  [Cpt. at 31-35.]

25      Because Plaintiff is suing a public entity (Riverside County) and

26  public employees, the substance and the pleading requirements for his

27  state law claims are governed by applicable provisions of the

28  California Tort Claims Act, Cal. Gov't Code sections 810 <u>et seq.</u>  A

public entity is not liable for an injury (by the entity or by an employee) except as provided by statute.  Cal. Gov't Code § 815. Public employees are liable for injuries caused by their own actions or omissions to the same extent as private persons, except as limited by statute.  Cal. Gov't Code § 820.  However, before bringing a lawsuit, against either a public entity or a public employee, a plaintiff must first comply with the requirements for timely filing a written claim with the proper officer or governmental body.  Cal. Gov't Code §§ 905 et seq., 950 et seq.  On bringing suit, a plaintiff must plead compliance with the claims presentation requirement in his or her complaint, and pendant state law claims in a federal civil rights suit are properly dismissed if the complaint fails to allege compliance with California Tort Claims Act procedures.  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988); see also, e.g., White v. City of Bakersfield, No. 1:11-CV-1692, 2012 WL 273088, at *4 (E.D. Cal. Jan. 30 2012)("In federal court, the failure to allege compliance with the Government Claims statutes with respect to a public employee will subject state law claims to dismissal." (citing Karim-Panahi, id.)); Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

    Here, Plaintiff has noted that his state law claims fall under provisions of the California Tort Claims Act, but he has not alleged compliance, let alone timely compliance, with the claims reporting procedure of the act with respect to any of his state law claims. [Cpt. at 31-35.]  Accordingly, Plaintiff's pendent state law claims are subject to dismissal, with leave to amend, for failure to comply with California's claims requirements.

1    **H.    CONCLUSION**

2         As discussed above, Plaintiff has stated claims, sufficient to

3    pass PLRA screening at this time, against Defendants Chaney and

4    Gelinas for violating Fourth Amendment guarantees against unreasonable

5    seizure of the person and excessive force.  On all other claims and

6    with respect to all other Defendants, the Complaint fails to state a

7    claim.  Accordingly, under PLRA screening, the Complaint is subject to

8    dismissal, with leave to amend, for failure to state a claim.

9                              **IV.    ORDERS**

10        It is therefore **ORDERED** as follows:

11        1.    The Complaint is dismissed with leave to amend.  Plaintiff

12   may amend in one of two ways.

13        2.    On or before April 6, 2012, Plaintiff may file a "Notice of

14   Amendment," stating that he opts to amend his Complaint by deleting

15   the claims found defective in this Memorandum and Order, and to

16   proceed only on his Fourth Amendment claims against Defendants Chaney

17   and Gelinas.

18        3.    If Plaintiff does so, the court will grant him leave to

19   proceed in forma pauperis and will authorize service of process by the

20   U.S. Marshal with respect to those two defendants only.

21        4.    Alternatively, on or before April 6, 2012, Plaintiff may

22   file a "First Amended Complaint," including both the Fourth Amendment

23   claims against Chaney and Gelinas, and other claims on which Plaintiff

24   can correct the relevant defects discussed above.  Such an amended

25   complaint must also comply with the following requirements:

26   (a)  The First Amended Complaint must bear the present case number

27        "EDCV 11-1603-CAS(CW)."

28   (b)  It must be complete in itself and may not incorporate by

                                    26

1        reference any part of any prior complaint.

2   ©    Plaintiff may not use "et al." in the caption, but must name each

3        Defendant against whom claims are stated in the First Amended

4        Complaint.  (The clerk uses the caption to make sure that

5        Defendants are correctly listed on the docket.)

6   (d)  Plaintiff may not add new parties without the court's permission.

7        5.   If Plaintiff files a First Amended Complaint, the court will

8   screen it, and issue further orders as appropriate.

9        6.   If Plaintiff does not act on either of these options, the

10  magistrate judge will recommend that this action be dismissed, without

11  prejudice, for failure to prosecute and/or failure to comply with

12  court orders, as well as for the reasons stated above.

13

14  DATE:   March 6, 2012

15

16                                    _Carla M. Woehrle_

17                                    CARLA M. WOEHRLE
                                      United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28